**[J-87-2019] [MO: Wecht, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| JAMES TEMPLE, ADMINISTRATOR FOR THE ESTATE OF ELMA B. TEMPLE, DECEASED, | : | No. 21 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered July 10, |
| Appellant | : | 2018, at No. 87 WDA 2017, |
| | : | affirming in part and reversing in |
| | : | part the Order of the Court of |
| v. | : | Common Pleas of Beaver County, |
| | : | Civil Division, entered December 14, |
| | : | 2016, at No. 11726-2012 and |
| PROVIDENCE CARE CENTER, LLC D/B/A | : | remanding. |
| PROVIDENCE CARE CENTER, | : | |
| | : | ARGUED:  October 15, 2019 |
| Appellee | : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE TODD**                                   **DECIDED:  JULY 21, 2020**

I join Sections I and II of the Majority Opinion and its thorough discussion of the history and import of our waiver and issue preservation jurisprudence, as well as its conclusion that Providence Care Center, LLC ("Providence") did not preserve a request for a mistrial at any point during the trial.[1]  I also join that part of Section III of the Majority Opinion that recognizes a trial court's *sua sponte* authority to order a new trial.  Majority Opinion at 15, 24 n.16.  Finally, I agree with the majority that the use by a trial court of its *sua sponte* authority to grant a new trial should be "limited and restrained," *id.* at 1, and only invoked in "rare circumstances," *id.* at 24.

---

[1] While counsel for Providence did lodge objections and requested a cautionary instruction to the jury, he did not ask for a mistrial.

I respectfully dissent, however, to the majority's unprecedented and newly created, but virtually unattainable, standard governing a trial court's *sua sponte* power to grant a new trial, and to the majority's conclusion that the trial court abused its discretion in granting a new trial in this case.

First, with respect to the appropriate standard, in my view, the majority's "severe deprivation of a party's liberty interest" standard, Majority Opinion at 25, is a bridge too far, which will effectively strip trial courts of their inherent and immemorial authority to grant a new trial *sua sponte*, and undermine their duty to ensure justice and fairness. Specifically, the majority traces decisions employing language that highlights the limited circumstances in which a trial court may grant a new trial on its own motion. However, the majority then interprets long-used references to "exceedingly clear error," resulting in "manifest injustice," to mean *only* constitutional or structural error, of such a magnitude as to amount to a "severe deprivation of a party's liberty interest." Majority Opinion at 25.

While I whole heartedly agree that the bar for invoking the *sua sponte* power should be high, in my view, the majority has set the bar out of reach. For example, in a civil case, such as this one only involving money damages, the severe deprivation of a liberty interest standard could never be met.

Furthermore, the majority's newly-minted standard is both inconsistent with our jurisprudence and with the traditional deference we accord trial courts. While the majority begins its discussion 1808, it fast-forwards almost 200 years to our decision in *Commonwealth v. Powell*, 590 A.2d 1240 (Pa. 1991), in support of its standard. Yet, as detailed below, in the 200 years in between, and after, our Court, and our intermediate courts, have adroitly reviewed instances when a trial court has *sua sponte* granted a new trial, all without the onerous standard imposed today.

Indeed, tracing the rich history of the *sua sponte* power, beginning with its English common law roots, reveals a much broader basis on which to permit such action, with a consistent focus on justice and fairness. Beginning with the English common law, in *Rex v. Atkinson*, 5 Term Rep. 437, note (1783), Lord Mansfield is quoted as indicating that, even without motion, "if it came out incidentally by the report that [a new trial] was proper, the court might grant one," and, further, "if the court conceive a doubt that justice is not done, it is never too late to grant a new trial, but not on the application of the party."[2]

Our Court's early decision in *Ewing v. Tees*, 1 Binn 450 (1808), further sharpens the point. In that decision, we spoke to this *sua sponte* power. Chief Justice Tilghman offered, "All that I shall say at present is, that it must be an exceedingly clear error indeed that should induce me to interfere, after the four days have expired without a motion for a new trial. . . . It is enough that in the present case, I am by no means satisfied that any injustice has been done to the defendant." *Id*. at 455-56. Justice Yeates found no new trial warranted, as "no injustice had been done by the verdict." *Id*. Justice Smith added that there was little evidence that "manifest injustice" had been done, but that if he had discovered that "injustice" had been done, he would have the ability to order a new trial. *Id*. at 456-57. Finally, Justice Brackenridge offered that he was not prepared to "say that this verdict was so palpably against the evidence as to make it clear that a new trial ought to be granted." *Id*. at 457. Thus, even when we first recognized a trial court's *sua sponte* authority to grant a new trial, this Court has articulated various standards.

Indeed, 100 years later, in *Commonwealth v. Gabor*, 58 A. 278, 279-80 (Pa. 1904), we held that "[t]here is no reason why a court, finding that it has committed an error, should not be able to correct it by an order for a new trial, rather than be compelled to wait to reach the same result by a reversal upon writ of error." *Gabor*, 58 A. at 279-80

---

[2] As discussed in *Commonwealth v. Gabor*, 58 A. 278, 279 (Pa. 1904).

(citing *Ewing*). Of course, the mere committing of "an error" is a low bar. Thus, in the oft-cited decision of *March v. Philadelphia & West Chester Traction Co.*, 132 A. 355, 356 (Pa. 1926), we articulated a slightly higher standard, in reaffirming the "immemorable right to grant a new trial, whenever, in [the court's] opinion, the justice of the particular case so requires." A quarter century later, in *Potanko v. Sears, Roebuck & Co.*, 84 A.2d 522, 525 (Pa. 1951), we reaffirmed that a trial court may "grant a new trial '*sua sponte*' whenever in its opinion the justice of the particular case so requires." At the same time, our Court also utilized the term "miscarriage of justice." *See Clewell v. Pummer*, 131 A.2d 375, 378 (Pa. 1957) ("Where a trial Judge or Court sees and hears the witnesses, it has not only an inherent fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice").

To be sure, we have used the phrase "interest of justice," the springboard for the majority's "severe deprivation of a party's liberty interest" standard. However, the majority's heavy reliance upon our Court's decision in *Powell* for its standard is misplaced; indeed, *Powell* supports a much broader standard.

Specifically, at issue in *Powell* was the Commonwealth's appeal of the trial court's granting of the defendant's motion for a new trial "in the interest of justice" after the trial judge persuaded the defendant to waive his right to a jury trial. *Powell*, 590 A.2d at 1241. Writing for the Court, Chief Justice Nix began with an extensive discussion of the "in the interest of justice" concept, which, in the Court's view, was focused on basic fairness: "The rationale 'in the interest of justice," employed to rectify errors which would otherwise result in unfairness, is deeply rooted in both federal jurisprudence and the common law of Pennsylvania." *Id.* at 1242. The Court continued by setting forth various iterations of the "interest of justice" concept, first noting that, under Rule 33 of the federal Rules of

Criminal Procedure, "application of this discretionary provision has been held to apply broadly and its use may only be reviewed if there is evidence of manifest abuse." *Id*. The Court continued, "'the very words of the rule — 'interest of justice' — mandate the broadest inquiry into the nature of the challenged proceeding." *Id.* (quoting *United States v. Narciso*, 446 F.Supp. 252, 304 (E.D. Mich. 1977)). Moreover, the Court explained that a judge granting a new trial under the federal rule need assign no reason other than it is required in the interest of justice.

Turning to Pennsylvania law, the *Powell* Court offered that the "interest of justice" allows a trial court to act "whenever, in its opinion, the justice of the particular case so requires." *Id.* (quoting *March*, *supra*). Indeed, the Court approved invocation of the *sua sponte* power "for the promotion of justice," and where "it will result in the attainment of justice." *Id.* at 1242-43. The Court reasoned: "It is the trial judge's review of the conditions and activity surrounding the trial which leaves him or her in the best position to make determinations regarding the fairness of the process and its outcome." *Id.* at 1243. Finally, and perhaps best articulating the appropriate standard, the Court concluded that "[i]t is apparent, therefore, if a trial court determines that the process has been unfair or prejudicial, even where the prejudice arises from actions of the court, it may, in the exercise of its discretionary powers, grant a new trial 'in the interest of justice.'" *Id.*

Making this standard concrete, the Court ultimately held that "the trial court, in assessing its own conduct and in arriving at the conclusion that the totality of circumstances was unfair to the appellee and compromised his right to adequate legal representation, was strongly supported by the record. As such, the granting of a new trial to the appellee was a proper exercise of the court's discretionary power in order to preserve the fairness of the process." *Id.* at 1245.

This broad understanding of the "interest of justice" standard, and its focus on basic justice and fairness, stands in stark contrast to the standard articulated by the majority today. Each judicial decision must be read against its facts. *Oliver v. City of Pittsburgh*, 11 A.3d 960 (Pa. 2011). While *Powell* dealt with the deprivation of the right to a trial by jury, and, thus, concerned an error of constitutional magnitude, there is no indication in *Powell* that the *sua sponte* power is limited to such contexts; rather, a review of the entire decision suggests, as set forth above, the exact opposite — a broad standard based upon justice and fairness.[3]

Indeed, subsequent to *Powell*, our Court has employed the "interest of justice" standard in contexts that do not implicate a severe deprivation of a liberty interest. *See, e.g., Joseph v. Scranton Times LP*, 987 A.2d 633, 635 (Pa. 2009) (adopting recommendation of a new trial in the "interest of justice" to remedy appearance of impropriety); *Armbruster v. Horowitz*, 813 A.2d 698, 704 n.6 (Pa. 2002) (in context of granting new trial where judge becomes unavailable to rule on post-trial motions, recognizing right of trial court to *sua sponte* grant a new trial in the interest of justice, citing *Powell* and *March*). As conceded by the majority, varied articulations of the standard continue to the present. *See, e.g., Commonwealth v. Dorm*, 971 A.2d 1284, 1288-89 (Pa. Super. 2009) ("interest of justice" standard applied in context of incorrect verdict slip and confusing jury instructions).

Fundamentally, the majority's standard is in tension with the great deference we traditionally give to our trial judges. Trial judges are charged with superintending trials. In numerous and diverse circumstances, we grant trial courts discretion over the conduct

---

[3] Moreover, the majority's use of our decision in *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 116 (Pa. 1974), and its rejection of the "basic and fundamental error" doctrine to give new and restrained meaning to *Powell*'s broad "interest of justice" standard, Majority Opinion at 24-25, is particularly troubling, as *Powell* postdated *Dilliplaine* by almost 20 years.

of trials. Trial courts have a "front row seat" to the proceedings, observing firsthand the conduct of counsel, the testimony of witnesses, and the actions of the jury. It is why we have bestowed upon them the immemorial right and duty to order a new trial in the interest of justice. Trial judges should not be stripped of their discretion to order a new trial in the interest of justice. In my view, the majority's standard essentially does that.

Based upon our precedent and the traditional deference we accord to trial courts, and in contrast to the majority, I favor the standard that has been largely followed for over 200 years: "if a trial court determines that the process has been unfair or prejudicial, even where the prejudice arises from actions of the court, it may, in the exercise of its discretionary powers, grant a new trial 'in the interest of justice.'" *Powell*, 590 A.2d at 1243.

Nevertheless, the circumstances in which a trial court may *sua sponte* grant a new trial should be limited. However, instead of the majority's virtual elimination of the *sua sponte* power, I would emphasize a rigorous application of the appropriate appellate standard of review — abuse of discretion. Again, as insightfully explained by our Court in *Powell*:

> This concept of "in the interest of justice" is merely a recognition of the trial court's discretionary power to ensure the fairness of the proceedings during the adjudicatory stage. An arbitrary and unsupported use of this power by a trial court to avoid justifying its ruling would be clearly inappropriate. As this Court stated in *Beal v. Reading Company*, 370 Pa. 45, 87 A.2d 214 (1952), "mere conclusions such as 'interest of justice' are insufficient. All judicial process necessarily is in the interest of justice. Such conclusion, *in the absence of amplification,* could well serve as a cloak or shield for abused judicial discretion." 370 Pa. at 49, 87 A.2d at 216 (Emphasis added.)

*Powell*, 590 A.2d at 1243.

Thus, the traditional abuse of discretion standard is appropriate when reviewing a trial court's *sua sponte* granting of a new trial. As echoed by our Court in *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181 (Pa. 1993):

> The term "discretion" imports the exercise of judgement, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Coker*, 625 A.2d at 1184-85 (citation omitted).

Consistent with our prior precedent, the traditional deference we accord our trial judges, and the ultimate goal of a fair and just trial, I would continue to utilize the standard articulated in *Powell*, reviewed for an abuse of discretion.

Turning to the instant case and the majority's analysis of whether the trial court invoked its *sua sponte* authority, I would find, as did the Superior Court, that the trial court did, indeed, invoke its authority to declare a new trial *sua sponte*. The majority initially asserts that the trial court did not "explicitly invoke that authority," Majority Opinion at 25, but continues that the trial court did not "justify its decision to grant a new trial in the 'interest of justice,'" and submits that the trial court ordered a new trial "only in the context of responding to Providence's post-trial motions," *id.* at 25-26. Thus, the majority concludes "there is no indication that the trial court intended to grant a new trial *sua sponte*." *Id.* at 26. On the contrary, and as observed by the Superior Court, I believe that

there is a sufficient basis for concluding that the trial court intended to grant a new trial on its own authority.

While perhaps not as explicitly as might be desired, the trial court nevertheless stressed that there were multiple, cumulative reasons for granting a new trial in the interest of justice and fairness. First, while the trial court did not explicitly voice that it was using its own authority to grant a new trial, it did explain that "when a trial judge believes that the trial was not fair, that judge is obligated to correct it." Trial Court Opinion, 3/8/2017, at 3. Second, as noted above, the trial court conveyed that the cumulative impact of the errors was the basis for its award of a new trial. The trial court explained that "[t]he *main problem* in this case was [Temple's] counsel's failure to follow the rules, and his co-mingling of arguments regarding compensatory and punitive damages, despite the court's admonition against this." *Id.* at 2 (emphasis added). The trial court continued, highlighting the discussion in its December 13, 2016 opinion on Providence's post-trial motions, that Temple repeatedly violated the court's "pre-trial orders and rulings during the trial, as well as its instructions prior to closing argument. *For example*, counsel sought to introduce the star-rating of the nursing home, after being told such evidence was inadmissible." *Id.* (emphasis added).

Critically, we rarely, if ever, require "magic words" to be used in legal discourse. *See Boggavarapu v. Ponist*, 542 A.2d 516, 519 (Pa. 1988) ("We do not mean to imply that there are magic, invocatory words that of themselves will justify a new trial. What we expect is that, along with the evidence, a trial judge's impression and analysis of that evidence will be fully articulated, leaving no doubt, at least to his mind, that the evidence and the verdict on that evidence represent an injustice."). Here, while the trial court did not use the phrases "manifest injustice" or "interest of justice," as explained above, our courts have not settled on agreed verbiage in this context. Fundamentally, however, the

trial court expressed its conclusion that the cumulative effect of the trial errors resulted in an unjust and unfair trial, Trial Court Opinion, 12/13/2016, at 37, that the trial was "not fair," Trial Court Opinion, 3/8/2017, at 3. Again, the trial court concluded it was its duty to remedy an unjust and unfair trial, offering that, "when a trial judge believes that the trial was not fair, that judge is obligated to correct it." *Id.*

Finally, I respectfully disagree with the majority that the trial court abused its discretion in *sua sponte* granting a new trial. The trial court concluded it had witnessed a trial run amok. In its view, repeated failures to abide by the court's directives with respect to crucial aspects of the litigation, including staffing, star rating, and closing arguments, resulted in extreme prejudice. In my view, the trial court amply justified its conclusion that the trial was unjust and unfair. Thus, applying our traditional *Powell* standard, and reviewing for an abuse of discretion, I would conclude that the trial court properly granted a new trial in this matter.

Justice Baer joins this concurring and dissenting opinion.